Filed 5/21/26

CERTIFIED FOR PUBLICATION

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>LEROY TYUS JR.,<br><br>    Defendant and Respondent. | E085359<br><br>(Super.Ct.No. FVI1002073)<br><br>OPINION |

APPEAL from the Superior Court of San Bernardino County.  Zahara Arredondo, Judge.  Affirmed with directions.

Jason Anderson, District Attorney, and Sean W. Daugherty, Deputy District Attorney, for Plaintiff and Appellant.

Ava R. Stralla, under appointment by the Court of Appeal, for Defendant and Respondent.

1

At age 15 in 2006, Leroy Tyus, Jr. joined Kevin Roach, who said they would "get some money" from an individual. Roach shot a man dead with Tyus standing nearby, unarmed. Charged with murder along with Roach, Tyus pled guilty to voluntary manslaughter and agreed to cooperate by testifying against Roach.

About 17 years later, Tyus filed a motion for resentencing under Penal Code section 1172.6,[1] which provides relief to some defendants charged as accomplices to murder who faced theories of imputed malice, including felony murder, that the Legislature has limited since their convictions. At the evidentiary hearing on Tyus's motion, the trial court granted it, finding that the People had not shown that Tyus was guilty of murder under current law. We conclude that the trial court did not err because the People lacked sufficient proof that Tyus intended to kill, rather than merely participate in what he understood to be a debt collection.

The court then erred, however. The court stated that Tyus should be sentenced on any remaining charges, saw that there were none, and dismissed the case. Instead, the court was obligated to redesignate Tyus's manslaughter conviction as an underlying felony, such as attempted robbery. (§ 1172.6, subd. (e).) Attempted robbery is consistent with Tyus's professed intent to take money and could serve as the basis for a felony-murder conviction, a theory Tyus's petition asserted he pled guilty to avoid. We remand this case for redesignation of Tyus's manslaughter conviction.

---

[1] Undesignated statutory sections are to the Penal Code.

2

The People's appellate argument focuses on another aspect of the trial court's comments. The People argue that the trial court's statement that there was no underlying crime means that section 1172.6 relief was improperly granted; absent an underlying crime, the only possible theory of murder would be that Tyus directly aided the shooter with intent to kill, a theory unchanged since Tyus's conviction. As we explain, the prosecution's burden at a section 1172.6 evidentiary hearing is to prove the defendant's guilt; it is not the defendant's burden to establish an alternate murder theory.

## I.  BACKGROUND

Effective January 1, 2019, Senate Bill No. 1437 (2017-2018 Reg. Sess., Stats. 2018, ch. 1015) amended the Penal Code to eliminate or curtail theories of murder liability based on imputed malice, particularly felony murder.  (*People v. Patton* (2025) 17 Cal.5th 549, 558 (*Patton*).)  It also created a path, now found in section 1172.6, for convicted defendants to obtain relief if their convictions would not be sustained under the amended law.  (*Ibid*.)

### A.  Petition and Prima Facie Case

In 2023, Tyus filed a form petition for resentencing under section 1172.6, identifying his 2010 voluntary manslaughter conviction, for which he received a 21-year sentence (including a gang enhancement) run concurrently with another case.  Tyus checked the boxes that make the petition facially sufficient and asserted:  "I pled guilty . . . in lieu of going to trial because I believed I could have been convicted of 1st or 2nd degree murder at trial pursuant to the felony murder rule or natural and probable

consequences doctrine."[2]  This assertion is central to establishing a prima facie case for section 1172.6 where the conviction was obtained by plea.

If a conviction was by jury, a defendant would assert in his petition that the jury convicted him on an imputed malice theory.  To assess whether that assertion established a prima facie case, "the jury instructions will be critical."  (*People v. Antonelli* (2025) 17 Cal.5th 719, 731; *Patton*, *supra*, 17 Cal.5th at p. 565, fn. 8 [prima facie case unless "jury findings 'conclusively establish[ed] every element of the offense' under a valid theory"].)

Where, as here, a conviction was by plea, there are no jury instructions showing what murder theory it was based on.  Rather, a prima facie case is established by Tyus's assertion that he believed he could be convicted on a now invalid theory.  That assertion establishes a prima facie case unless "undisputed facts from a record of conviction" establish the conviction "was under a still-valid theory."  (*Patton*, *supra*, 17 Cal.5th at p. 565 & fn. 8.)  Undisputed facts might do so if, for instance, statements in the record showed that the case "was premised on him being the sole shooter."  (*Patton*, at p. 569; *People v. Rodriguez* (2026) 117 Cal.App.5th 1179, 1196.)  But where the record contains "facts that identify someone else as the direct perpetrator," that normally constitutes a prima facie case.  (*Patton*, at p. 567; see *id.* at p. 560, fn. 4 [People agree that prima facie case ""'"ordinarily would be readily established"'"" if the record contains any indication that an accomplice, rather than the defendant, was the killer].)

---

[2]  Tyus used a 2018 version of the form seeking resentencing, so it referred to section 1170.95, which in 2022 was renumbered without substantive change as section 1172.6.  (*People v. Strong* (2022) 13 Cal.5th 698, 708, fn. 2.)

4

Here, there has been no dispute that Roach was the shooter and Tyus was not. The People agreed that Tyus's petition asserted a prima facie case for section 1172.6 relief, and the trial court found that it did. The finding of a prima facie case meant that the case was set for an evidentiary hearing.

*B. Evidence Introduced*

At the evidentiary hearing, "the burden of proof shall be on the prosecution to prove, beyond a reasonable doubt, that the petitioner is guilty of murder or attempted murder under California law as amended by the changes made effective January 1, 2019." (§ 1172.6, subd. (d)(3).)

The evidence admitted at the evidentiary hearing consisted of two transcripts of Tyus's sworn testimony. These were Tyus's plea allocution and his preliminary hearing testimony implicating the shooter. For the plea allocution, Tyus was placed under oath and questioned by the prosecutor. For Tyus's preliminary hearing testimony, the People also questioned Tyus, and Roach's attorney cross-examined him. The People later introduced Tyus's testimony into evidence at Roach's trial after Tyus was declared unavailable due to noncooperation.

According to Tyus, the relevant events on the day of the killing unfolded quickly. On April 17, 2006, three people, including Roach, drove to Tyus's apartment and picked him up without him knowing they were coming. They drove about five minutes to some apartments, and during the drive Roach told Tyus they were going to collect some money. Tyus testified at the preliminary hearing:

Q:     At what point had he told you you were going to collect money?

A:     When I got in the car.

Q:     How long did it take to drive [there]?

A:     Not long. Like five, ten minutes. Five minutes.

Q:     It was during that drive he told you you were going to collect money?

A:     Yes.

During the ride, Tyus saw no gun and Roach said nothing about one.

Roach and Tyus got out of the car at some apartments. Roach had a gun but Tyus did not. As they approached a house, a man came out. When the man emerged, Roach "sped up," leaving Tyus behind. The man went to a laundry room, and Roach caught up to him there. Roach shot the man, Dustin Diaz, while Tyus was 10 to 20 feet away.

Tyus testified at the preliminary hearing as follows:

Q:     Did you know that you were going there to shoot somebody?

A:     No, sir.

Q:     Why did you think you were going there?

A:     To get some money.

Q:     Okay. So you thought this was a debt collection?

A:     Yes, sir.

After the shooting, Roach and Tyus ran back to the car, and the driver drove them away. Roach never explained the shooting to Tyus.

6

Roach and Tyus were gang members. Tyus also testified that on a date before the Diaz murder, Roach committed a burglary with Tyus standing lookout. During that burglary, Roach hopped through a house window and took a gun. Tyus later went with Roach to a Walmart, where another man with them purchased ammunition for the gun. Roach used that gun to kill Diaz.

Tyus's testimony also addressed a crime a month after the Diaz killing, in which Tyus again joined Roach for a robbery. Roach killed again. Immediately before Tyus pled guilty to manslaughter in the Diaz case, he also pled guilty to manslaughter as to the other killing, of victim Peter Roth. Tyus testified that he and Roach discussed robbing someone to get money, with Roach using the same gun used to shoot Diaz. They attempted the robbery, during which Roach shot and killed Roth. They took nothing. Our record shows that Tyus is seeking a section 1172.6 resentencing as to his conviction for the Roth killing, but that is not before us.

*C. Court's Ruling*

At the evidentiary hearing, the People rested on the submission of the transcripts of Tyus's plea allocution and his preliminary hearing testimony. Neither party presented oral argument on the merits.

In ruling, the court stated that under section 189, subdivision (e), malice "should not be imputed to a person based solely on his or her participation in a crime." The court recognized that "a participant in the perpetration or attempted perpetration of a felony listed in subdivision (a) [of section 189], [in] which a death occurs, is liable for murder

7

only if one" of the three prongs in subdivisions (e)(1) through (e)(3) applies. Those are that either the defendant was the killer; that the defendant, with intent to kill, aided the killer in first degree murder; or that the defendant "was a major participant in the underlying felony and acted with reckless indifference to human life."

The court then went over the evidence and concluded that it did not fall under section 189, subdivision (e)(1) to (e)(3). The court therefore found the People had not met their section 1172.6, subdivision (d)(3) burden "to prove beyond a reasonable doubt that Mr. Tyus is guilty under California law, as amended."

The trial court granted Tyus's petition as follows. The court found Tyus "not guilty" and vacated his conviction. In doing so, it stated: "Mr. Tyus shall be resentenced on any remaining charges, to which I believe there are none." (See § 1172.6, subd. (d)(3) ["the petitioner shall be resentenced on the remaining charges"].) Neither the court nor either party referred to section 1172.6, subdivision (e), which states that if the target offense was not charged, the "conviction shall be redesignated as the target offense or underlying felony."[3] The court ordered Tyus released with time served and the case dismissed.

Following that dismissal ruling, the prosecutor asked the court what the underlying felony or target crime was. The court stated that it did not believe there was one. The prosecutor argued that this means that "the People could not proceed under a felony

_____

[3] "Underlying felony" is the term used for the offense intended in the felony murder context; "target offense" is used in the context of the natural and probable consequences doctrine. (*People v. Arellano* (2024) 16 Cal.5th 457, 470.)

8

murder theory in a murder trial" and noted that they did not proceed on one at Roach's trial. In the prosecutor's view, "this was straight aider and abettor." The court responded: "I do not believe that Mr. Tyus . . . should have pled in the first place. But . . . the law was different back then. The changes in the law, this case would not even have been filed against Mr. Tyus."

## II. ANALYSIS

The basic facts here are simple and undisputed. Tyus admitted walking from a car with Roach to find an individual, falling behind as Roach sped ahead, and that he was standing 10 to 20 feet away when Roach shot Diaz.

Given these facts, Tyus's petition presents a choice between two theories of murder liability for his actions with Roach. Tyus's intent provides the difference between them. First, the People argue that he was guilty of directly aiding and abetting a murder. This theory requires the prosecution to prove that Tyus had the intent to kill. (*In re Lopez* (2023) 14 Cal.5th 562, 587.) In contrast, Tyus's petition claims he pled guilty to manslaughter because he feared conviction on a felony-murder theory for participating in a lesser crime where a death occurred. Here, the facts suggest a crime of attempted robbery because Tyus testified he believed the duo was collecting a debt.

As we will discuss in section A, the evidence supports the trial court's conclusion that the People failed to prove direct aiding and abetting a murder beyond a reasonable doubt. That was the proof the People needed to refute the showing in Tyus's petition.

9

Because the evidence does not compel a conclusion in the People's favor, we may not disturb the trial court's finding that the People did not meet their burden.

The trial court dismissed the case, with no conviction imposed in place of his manslaughter conviction. In section B, we will explain that the trial court erred in doing so. If no underlying crime is charged, section 1172.6, subdivision (e) requires a murder or manslaughter conviction to be recharacterized as another conviction (here, attempted robbery) if the prosecution fails in its burden of proof. We remand for Tyus's manslaughter conviction to be redesignated as attempted robbery.

*A. The Trial Court Did Not Err in Concluding the People Failed to Prove Tyus Guilty of Murder Beyond a Reasonable Doubt*

If a petitioner makes a prima facie case for relief on a section 1172.6 petition, the matter "proceeds to an evidentiary hearing on the ultimate question of whether petitioner should be resentenced." (*Patton*, *supra*, 17 Cal.5th at p. 562.) Under section 1172.6, subdivision (d)(3), the petitioner receives a new sentence unless the People satisfy their burden of proof. At the evidentiary hearing, "the burden of proof shall be on the prosecution to prove, beyond a reasonable doubt, that the petitioner is guilty of murder or attempted murder under California law as amended by the changes to Section 188 or 189 made effective January 1, 2019." (§ 1172.6, subd. (d)(3).) "A finding that there is substantial evidence to support a conviction for murder, attempted murder, or manslaughter is insufficient to prove, beyond a reasonable doubt, that the petitioner is ineligible for resentencing." (*Ibid.*)

10

Tyus was not the shooter, and the only theory the People assert is that he directly aided and abetted Roach in the murder. They claim that Tyus served as "a lookout or as a show of force to allow Roach to kill." The trial court found that the People had not proven beyond a reasonable doubt that Tyus was guilty of murder.

We generally review a trial court's ruling after an evidentiary hearing on a section 1172.6 petition for substantial evidence. (*People v. Emanuel* (2025) 17 Cal.5th 867, 885.) Nevertheless, as our Supreme Court has explained, that standard differs where, as here, "the trier of fact has found that the party with the burden of proof did not carry that burden." (*In re R.V.* (2015) 61 Cal.4th 181, 217-218.) Then, "'it is misleading to characterize the failure-of-proof issue as whether substantial evidence supports the judgment. This follows because such a characterization is conceptually one that allows an attack on (1) the evidence supporting the party who had no burden of proof, and (2) the trier of fact's unassailable conclusion that the party with the burden did not prove one or more elements of the case [citations].'" (*Ibid*.) Thus, because the issue here "'"turns on a failure of proof . . . the question for a reviewing court becomes whether the evidence compels a finding in favor of the appellant as a matter of law. [Citations.] Specifically, the question becomes whether the appellant's evidence was (1) "uncontradicted and unimpeached" and (2) "of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding."'" (*Ibid*.)

Convicting Tyus for murder on a direct aiding and abetting theory requires proof that Tyus had the intent to kill. (*In re Lopez*, *supra*, 14 Cal.5th at p. 587; *People v.*

11

*Amezcua and Flores* (2019) 6 Cal.5th 886, 918.)  Direct aiding and abetting is "not a separate offense but a form of derivative liability for the underlying crime."  (*People v. Gentile* (2020) 10 Cal.5th 830, 843.)  It requires "knowledge of the direct perpetrator's unlawful intent and an intent to assist in achieving those unlawful ends."  (*People v. Perez* (2005) 35 Cal.4th 1219, 1225.)  That is, "'outside of the natural and probable consequences doctrine, an aider and abettor's mental state must be at least that required of the direct perpetrator.'"  (*People v. Antonelli*, *supra*, 17 Cal.5th at p. 729.)  If Tyus, with intent to kill, directly aided Roach in the killing, then Tyus would have "malice aforethought."  (*People v. Gentile*, *supra*, at p. 844.)  In that way, his conviction would be unaffected by Senate Bill No. 1437, which required that "a principal in a crime shall act with malice aforethought.  Malice shall not be imputed to a person based solely on his or her participation in a crime."  (§ 188, subd. (a)(3); see *People v. Gentile*, *supra*, at p. 846.)

In Tyus's memorandum in support of his petition in trial court, he argued that he did not intend for Diaz to be killed.  At the evidentiary hearing, the only direct evidence bearing on Tyus's intent during the Diaz murder was Tyus's testimony in Roach's preliminary hearing.  Tyus then served as a cooperating witness, with his testimony elicited by a prosecutor and apparently introduced into evidence by the People at Roach's trial.  Tyus testified that during a brief drive to some apartments, Roach told Tyus they were going to collect some money, and Tyus denied that he believed they were going there to shoot someone.  According to his testimony, then, Tyus lacked intent to kill.

12

The People call direct aiding and abetting a "viable theory under which Tyus could now be prosecuted," but they do not use the facts to explain how they *proved* the necessary intent beyond a reasonable doubt. Indeed, both in their opening brief and their trial court position paper, the People stated, "Tyus believed this was a debt collection." That the People characterize Tyus's belief this way undermines their argument that they proved Tyus's intent to kill beyond a reasonable doubt. Further, in their opening brief, the People describe the later crime that Tyus committed with Roach as one where "Tyus *again* specifically intended to aid and abet Roach in a *robbery*" (italics added). That also suggests that the natural conclusion from the evidence is that Tyus did not intend to kill.

The People allude to circumstantial facts that they believe show Tyus's guilt on a theory of directly aiding and abetting a murder. They note that Tyus had previously stood lookout for a burglary by Roach, that Tyus accompanied Roach to what he claimed was a debt collection, that Tyus was the only one to exit the car with Roach, and that upon the shooting Tyus did "nothing in response" and fled the scene. From this, they assert that "[i]t is reasonable to infer that Tyus was again serving as a lookout or as a show of force to allow Roach to kill."

These facts can establish that Tyus intended to serve as a lookout. The question is what he was keeping watch *for*. If anything, Tyus's prior role as a lookout for a *burglary* supports his testimony that he intended to participate in a taking of property, not a taking of life. The other circumstances are as consistent with Tyus's testimony that he intended to aid in collecting money as that he intended to aid in a murder. Given the paucity of

13

facts showing intent to kill, the evidence falls far short of compelling the conclusion that the People carried their burden.

The People next argue that because Tyus pled guilty to voluntary manslaughter, the People "did prove the case that Tyus was a direct aider and abettor to the murder of Diaz by his own judicial admissions." This argument rests on the bare fact of the guilty plea, not on any facts Tyus admitted at the time.

If a defendant is charged generically with murder, a guilty plea to murder alone does not establish that the defendant was convicted on a theory that survives Senate Bill No. 1437. (*People v. Eynon* (2021) 68 Cal.App.5th 967, 978.) Accordingly, where an accomplice pleads to voluntary manslaughter, that also does not alone establish he is guilty of murder under a still-viable theory. (*People v. Estrada* (2024) 101 Cal.App.5th 328, 338; *People v. Gaillard* (2024) 99 Cal.App.5th 1206, 1212-1213.) For one thing, a defendant could be admitting he is guilty of manslaughter under a natural and probable consequences theory, rather than a theory that requires intent to kill. (*People v. Gaillard*, at p. 1212.) For another, the person could be admitting he is guilty of manslaughter without the malice required for first-degree murder. (*Ibid*.)

There is a broader reason, squarely applicable here, why a manslaughter plea does not by itself establish guilt on a viable murder theory under section 1172.6. The Legislature added manslaughter to the crimes covered by section 1172.6 in 2021, even though only the laws of murder were changed by Senate Bill No. 1437. It did so because a defendant charged with murder may enter a manslaughter plea based on a risk

14

calculation. That is, "a petitioner may have pled guilty or no contest to voluntary manslaughter in order to forego the risk of being convicted of murder or attempted murder under one of these subsequently abrogated theories of liability." (Assem. Com. on Public Safety, Analysis of Sen. Bill No. 775 (2021–2022 Reg. Sess.) as amended July 6, 2021, p. 7.) This is what Tyus asserted in his petition. If a manslaughter plea alone provided the proof the People needed, any defendant who pleaded guilty to manslaughter would be disqualified from section 1172.6 relief. Indeed, there would be no need for any evidentiary hearings for such defendants, as the plea would be part of the record of conviction considered at the prima facie stage.

The record suggests Tyus pled guilty based on a risk calculation, not an admission of all the elements of the crime. When he pled guilty in 2010, he did not check the box on the form declaration that said that he was pleading guilty for the sole reason that he was guilty. Rather, he checked an alternative box stating that he was pleading guilty due to the possibility of being convicted on more serious charges or receiving a longer sentence. At the plea hearing, the prosecutor questioned Tyus to establish a factual basis for the plea, but the prosecutor did not elicit a statement that Tyus had intent to kill. The court also did not make an express finding that there was a factual basis for voluntary manslaughter but simply established that counsel joined in the plea and the admissions. (See *People v. Palmer* (2013) 58 Cal.4th 110, 118 [court may accept "a stipulation from counsel that a factual basis for the plea exists"]; *People v. Holmes* (2004) 32 Cal.4th 432, 441 [court merely has to ensure there is a "prima facie factual basis for the charges" and

15

does not "have to be convinced of [the] defendant's guilt"].) At Roach's preliminary hearing, Tyus testified he believed he was participating in obtaining money rather than killing. Our record thereby shows that Tyus was a defendant in the very situation for which manslaughter was covered by section 1172.6: a defendant who pled not because he was admitting guilt but to forgo the risk of being convicted of murder, where his professed intent (to get money from a person) could have subjected him to felony-murder liability.

Finally, despite Tyus's early guilty plea, the People state that this case "was proven" on a direct aiding and abetting theory, and suggest that the jury instructions from Roach's trial are relevant because he was not tried on a felony-murder theory. They likewise argued to the trial court that "[t]he facts are exactly the same. And Mr. Roach wasn't prosecuted under a felony murder theory." The trial court rejected that argument: "How the People pursued a conviction against Mr. Kevin Roach is not properly an answer to the question of whether they can prove this case beyond a reasonable doubt against Mr. Tyus." The trial court was correct. (*People v. McCoy* (2001) 25 Cal.4th 1111, 1118 [accomplice's "mental state is her own; she is liable for her mens rea, not the other person's"].)

More generally, what the People intended when charging the case and proceeding against the principal (Roach) does not constrain what theories Tyus feared when pleading guilty, knowing what his trial defense would be. (See *People v. Das* (2023) 96 Cal.App.5th 954, 962 [prosecution's main theory of the case does not establish why the

16

defendant believed the jury would have convicted him].)  In the operative complaint here, the People charged murder generically against three defendants:  Roach, Tyus, and the driver.  Tyus pled guilty just 13 days later.  It may well be that in charging the case, the prosecution did not have a felony-murder theory in mind.  Indeed, it may not have been until Tyus's testimony at Roach's preliminary hearing that the prosecution was even aware of Tyus's position that he intended to take money (rather than to kill) when he joined Roach as an apparent lookout.

What the People believe when they charge a murder case does not limit what theories they can raise later.  When, as here, a defendant is charged with murder under section 187, the prosecution can proceed at trial on any murder theory, including felony murder.  (*People v. Contreras* (2013) 58 Cal.4th 123, 147; *People v. Hughes* (2002) 27 Cal.4th 287, 368-370.)  Well before Tyus's conviction, our Supreme Court held that "where the People intend to rely on a felony-murder theory, the underlying felony need not be pleaded in the information."  (*People v. Thomas* (1987) 43 Cal.3d 818, 829, fn. 5; *People v. Witt* (1915) 170 Cal. 104, 107-109).  If murder is charged generically, the prosecution can decide to pursue a felony-murder theory at a later point.  (*People v. Murtishaw* (1981) 29 Cal.3d 733, 750-751 & fn.11 [holding that the defendant had adequate notice of "belated injection of the felony murder theory" into jury instructions even where murder was charged "in the short form" and underlying felonies were not charged]; *People v. Davis* (1995) 10 Cal.4th 463, 512-513 [prosecution informed defendant of felony-murder theory before opening statements]; *People v. Gallego* (1990)

17

52 Cal.3d 115, 189 [murder charged generically and felony-murder instruction was submitted pretrial].) Several cases before Tyus's plea rejected defense contentions that the defendant lacked notice of a felony-murder jury instruction where murder was charged generically. (See *People v. Johnson* (1991) 233 Cal.App.3d 425, 456 [midtrial request for felony-murder instruction]; *People v. Scott* (1991) 229 Cal.App.3d 707, 712-718 [instruction alluded to at voir dire and during first witness]; *People v. Crawford* (1990) 224 Cal.App.3d 1, 7-9 [instruction alluded to during pretrial discussion].) A felony-murder theory can arise when the defense provides "unexpected testimony that opened the door" to it. (*People v. Loza* (2012) 207 Cal.App.4th 332, 361-364.)

This explains why Tyus can properly assert that he pled guilty because he "believed [he] could have been convicted of 1st or 2nd degree murder at trial pursuant to the felony murder rule or the natural and probable consequences doctrine" even if the theory had not surfaced in the charging document. His assertion, as an accomplice who was not the actual killer, is what triggered the prosecution's burden of proof under section 1172.6. (See *People v. Strong*, *supra*, 13 Cal.5th at p. 712 [§ 1172.6 prima facie case "does not require a showing that a claim to relief under Senate Bill No. 1437 arises from *no other* cause—only that the 2019 changes supply a basis for the claim and so are *a* cause"].) The evidence does not compel a conclusion that the trial court erred in finding that the prosecution did not meet its burden.

> B. *The Trial Court Erred in Failing to Redesignate Tyus's Manslaughter Offense as Attempted Robbery*

### 1. *The Error*

Because the People failed to prove that Tyus was guilty of murder under current law, the trial court had to provide relief. It followed a directive from section 1172.6, subdivision (d)(3), that mandates the petitioner be resentenced on the remaining charges. Because there were none, the trial court dismissed the case. In doing so, it overlooked an additional requirement in subdivision (e) that states that if there are no remaining charges, the conviction must be redesignated as the underlying felony or target crime.

This error resulted from reading subdivision (d) as the sole statement of the remedy. The court referred to only subdivision (d) both times it addressed the applicable law. At the evidentiary hearing, the trial court began its analysis by reading the statutory requirements for a section 1172.6 evidentiary hearing. It concluded that reading with the last sentence of its subdivision (d)(3): "If the prosecution fails to sustain its burden of proof, the prior conviction and any allegation and enhancement attached to the conviction[,] shall be vacated and the petitioner shall be resentenced on the remaining charges." By itself, this language appears mandatory and offers only the option of resentencing Tyus on charges remaining.

Once more, following its finding that the People had not met their burden of proof, the trial court returned to the "remaining charges" requirement. It said: "Again, pursuant to Penal Code Section 1172.6(d)(3) . . . the People have not met their burden to prove beyond a reasonable doubt that Mr. Tyus is guilty under California law, as amended by the changes to Section 188 or 189, made effective January 1st, 2019. Therefore, the prior

19

conviction . . . shall be vacated.  I will find him not guilty.  Mr. Tyus shall be resentenced on any remaining charges, to which I believe there are none."  The court then said that Mr. Tyus was to be released and the case was dismissed.  The court thus dismissed the case solely because no charges remained.

This was error.  Neither party brought subdivision (e) to the court's attention.  That subdivision provides a requirement in addition to resentencing on any remaining charges.  The relevant part of subdivision (e) states:  "The petitioner's conviction shall be redesignated as the target offense or underlying felony for resentencing purposes if the petitioner is entitled to relief pursuant to this section, murder or attempted murder was charged generically, and the target offense was not charged."  (§ 1172.6, subd. (e).)

Due to subdivision (e), the trial court cannot simply follow subdivision (d)(3) and declare that there are no remaining charges.  It must redesignate Tyus's murder conviction.  (See *People v. Arellano*, *supra*, 16 Cal.5th at p. 469 [where target offense or underlying felony is uncharged, conviction shall be redesignated as target offense or underlying felony].)

Due to this error, we remand for redesignation of Tyus's manslaughter conviction as an underlying felony.  The People have not sought this relief, because, as will be discussed in the following section, they seek the broader remedy of reversal of the grant of Tyus's petition.  Although a remand may have little practical effect, we conclude it is required to ensure compliance with section 1172.6.  The parties agree that, on remand, rather than being resentenced, Tyus would need to be transferred to juvenile court.  (See

20

*People v. Keel* (2022) 84 Cal.App.5th 546, 551.) Furthermore, Tyus's sentence in this case was run concurrently with a separate criminal sentence for his later conviction, which, as far as we know, remains extant. Tyus did not ask for dismissal, arguing in trial court only for transfer to juvenile court, even when he argued, as an alternative to section 1172.6, that the trial court should exercise its general authority to resentence him under section 1172.1. Charges may be dismissed under section 1385, subdivision (a), but that provision has not been raised here. Under subdivisions (d)(3) and (e) of section 1172.6, the court was required to resentence Tyus—either on remaining charges or on a redesignated offense. Under section 1172.6, dismissal was not an option.

On remand, the trial court should redesignate Tyus's manslaughter conviction as attempted robbery. To defend himself at trial, Tyus might have needed to testify—as he did at Roach's preliminary hearing—that he intended to help Roach "collect some money, so-called." Such testimony would serve as a defense to directly aiding a murder, but it would open the door to the possibility he is guilty of attempted robbery, a predicate for felony murder when a death occurs during the crime. (See § 189.) His reference to the collection as "so-called" may show that even he recognized joining armed gang members obtaining money at night was something other than a legitimate debt collection.

"An attempted robbery consists of two elements: (1) the specific intent to rob; and (2) a direct, unequivocal, but ineffectual, overt act towards the commission of the intended robbery." (*People v. Burgess* (2023) 88 Cal.App.5th 592, 604.) Tyus's murder defense could show he understood the so-called "collection" of money with Roach to be a

21

robbery, that is, the taking of personal property from the person of another by force or fear. (§ 211.) Tyus arguably took an act (although ineffectual) toward a robbery because California law has a "slight acts" standard for acts necessary to constitute an attempt. (*People v. Superior Court (Decker)* (2007) 41 Cal.4th 1, 8; *People v. Dillon* (1983) 34 Cal.3d 441, 456.) To establish a prima facie case on his petition, Tyus did not need to assert that he *is* guilty of attempted robbery based on the evidence admitted at his evidentiary hearing. He needed to assert that he (with his counsel) believed, when he pled guilty less than two weeks after charges were filed, that he could face felony-murder liability if he offered his defense. Once the People failed to establish Tyus guilty of murder at the evidentiary hearing, on the record here, Tyus's manslaughter conviction should have been redesignated as attempted robbery under section 1172.6, subdivision (e).

> 2. *The Trial Court's Post-Dismissal Comments Provide No Ground for Reversal*

The People argue for reversal based on a statement from the trial court when, after it said it was dismissing the case, the prosecutor made a "brief record." Responding to the prosecutor's question, the trial court stated that it did not believe there was an underlying felony or target offense. The People argue this statement makes Tyus "statutorily ineligible" for section 1172.6 relief, presumably because they read it to show that no abrogated murder theory applied when Tyus pled guilty.

The People place too much weight on the trial court's comment. The trial court followed its comment by stating that it did not believe Tyus "should have pled in the first place." This may mean that the trial court believed that Tyus was *not guilty* of an underlying felony based on the evidence at the evidentiary hearing. This is a different point than what Tyus asserted in his petition. There, he asserted that he decided to enter a guilty plea, accepting an early and favorable plea offer, because he wished to avoid being convicted on a felony-murder theory at trial under prior law. The trial court's next comment confirms that it believed matters were different at the time of the plea: "But changes in the law, the law was different back then. The changes in the law, this case would not even have been filed against Mr. Tyus with the facts as presented with what I have." That is, the trial court said that Senate Bill No. 1437's changes *do* affect the analysis of this case. The only way that statutory changes could bear on the case is if an abrogated murder theory could have applied to the facts under prior law. The trial court in fact articulated that Tyus could not now be convicted of murder "because of" Senate Bill No. 1437's changes. (§ 1172.6, subd. (a)(3).)

The People's argument has some appeal because Tyus never asserted precisely what underlying felony served as his "predicate for relief in the first place." (*People v. Arellano*, *supra*, 16 Cal.5th at p. 475.) But this is in part because the People conceded that Tyus's petition asserted a prima facie case for relief. Tyus asserted that he pled guilty to manslaughter because of the risk that he "could have been convicted of 1st or 2nd degree murder at trial pursuant to the felony-murder rule or natural and probable

23

consequences doctrine." When the court finds a prima facie case it takes Tyus's

""""allegations as true."""" (*Patton*, *supra*, 17 Cal.5th at p. 563.) Once the court finds a

prima facie case, the court "must issue an order to show cause" and hold the evidentiary

hearing "at which the People will bear the burden of defending a conviction under the

amended law." (*Id.* at p. 556.) The petitioner no longer has anything to prove. The

People must prove Tyus's guilt; Tyus need not prove his allegations. In this way, the

section 1172.6 process differs from that in a habeas corpus proceeding with which it is

sometimes compared, as in a habeas proceeding the petitioner bears the burden of proof

throughout the process. (*Id*. at p. 565, fn. 7.)

Here, the People essentially argue that they had no burden to prove Tyus's guilt

because the record "foreclosed the conclusion" that there was a now-abrogated murder

theory motivating his guilty plea. (*Patton*, *supra*, 17 Cal.5th at p. 569.) That is an

argument about the prima facie case. It is not an argument that they proved him guilty of

murder under current law, which is the People's burden at a section 1172.6 evidentiary

hearing. (§ 1172.6, subd. (d)(3).) The argument means that they contend the petition

should never have proceeded to an evidentiary hearing. When that is the People's

position, they should oppose a prima facie finding and insist that Tyus "have the burden

of coming forward with nonconclusory allegations to alert the prosecution and the court

to what issues an evidentiary hearing would entail." (*Patton*, *supra*, at p. 567.) Here, the

People agreed there was a prima facie case. After losing at the evidentiary hearing, they

24

attempted to prevail not by showing they met their evidentiary burden, but by arguing the hearing should not have occurred.[4] This is not a basis for reversal.

In the petition before us, Tyus asserted that he pled guilty to manslaughter with the belief that he faced a felony-murder theory, and it has been undisputed that Roach, rather than Tyus, was the shooter. The People agreed with the court's finding that Tyus pled a prima facie case in his petition. We lack a basis to determine the uncontested finding of a prima facie case was in error. That finding placed the burden on the People at the evidentiary hearing, and, as explained in section A above, the evidence did not compel a finding in their favor. We therefore may not disturb the trial court's ruling.

---

[4] We do not here suggest that once the People have agreed a petition establishes a prima facie case that they can never retract that position. If the People wish to retract their concession, however, it would be best done as a clear position before the evidentiary hearing occurs. Here, the People never attempted to retract their concession that Tyus pled a prima facie case. Instead, after losing the evidentiary hearing, they attempted to imply that they satisfied their burden of proving Tyus guilty of murder under current law because of the lack of proof of an underlying felony.

25

## III. DISPOSITION

We affirm the trial court's ruling insofar as it granted Tyus's petition. We remand for the trial court to redesignate Tyus's conviction as attempted robbery in accordance with section 1172.6, subdivision (e), or to take other action consistent with this opinion.

CERTIFIED FOR PUBLICATION

RAPHAEL_____
J.

We concur:

McKINSTER_____
            Acting P. J.
LEE_____
            J.

26